UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE LYNN SCHIFFMAN,

            Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

            Defendant.

Case No. C10-1642-RSM-BAT

**REPORT AND RECOMMENDATION**

Julie Lynn Schiffman seeks review of the denial of her Disability Insurance Benefits application. She contends the ALJ erred, at step two, by failing to find that her Chronic Fatigue Syndrome (CFS) and mental health problems were severe impairments, and by improperly discounting her testimony. Dkt. 13. As discussed below, the Court recommends the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Schiffman is currently 39 years old, has a GED, and has worked as a bank teller, customer service representative, and an administrator for a pregnancy crisis home.[1] On June 27,

---

[1] Tr. 86, 121, 124.

REPORT AND RECOMMENDATION - 1

2007, she applied for benefits, alleging disability as of June 15, 2007. The application was denied initially and on review.[2] After conducting a hearing on March 10, 2010, the ALJ found Ms. Schiffman not disabled.[3] As the Appeals Council denied Ms. Schiffman's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[4] the ALJ made the following findings:

**Step one:** Ms. Schiffman had not worked since June 15, 2007.

**Step two:** Ms. Schiffman had the following severe impairments: fibromyalgia, a left knee strain, and Raynaud's phenomenon.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:** Ms. Schiffman could perform the full range of light work. She must avoid exposure to extremes of cold or dampness.

**Step four:** As Ms. Shiffman could perform her past work as a bank teller, customer service/credit clerk, and residence supervisor she was not disabled.

Tr. 11-14.

**DISCUSSION**

**A.    The ALJ's step two findings regarding CFS**

Ms. Schiffman contends the ALJ erred at step two in failing to find CFS to be a severe impairment. Dkt. 14 at 12. The Commissioner concedes error but argues the ALJ's error is harmless because the ALJ adopted Dr. Mark Heilbrunn's opinions about how CFS impaired Ms. Schiffman, and incorporated those opinions in assessing Ms. Schiffman's residual functional

---

[2] Tr. 43, 48.
[3] Tr. 6-18.
[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

capacity. *Id.* The record, however, does not support the Commissioner's arguments.

There is no evidence the ALJ incorporated Dr. Heilbrunn's or any other doctor's opinions about limitations associated with CFS in assessing Ms. Schiffman's residual functional capacity. The ALJ's discussion about the medical evidence pertaining to CFS is skimpy. At step two, the ALJ made no mention of CFS, and also made no mention that Dr. Heilbrunn diagnosed Ms. Schiffman with CFS. Tr. 11. The ALJ's avoidance of any discussion of CFS continued throughout the decision. For example, in assessing Ms. Schiffman's residual functional capacity at step four, the ALJ found the medical evidence showed "the claimant has a history of Raynaud's phenomenon and a constellation of symptoms including fatigue and pain, without firm identification for the etiology of her symptoms." Tr. 12. This finding indicates the ALJ believed there was no medical evidence that Ms. Schiffman suffered from CFS. Tr. 11. This interpretation of the ALJ's finding is consistent with the ALJ's subsequent discussion of Dr. Heilbrunn's opinions. The ALJ found "Dr. Heilbrunn diagnoses fibromyalgia, Raynaud's phenomenon and left knee pain, post patellar dislocation." Tr. 13. But, the ALJ did not indicate whether Dr. Heilbrunn diagnosed Ms. Schiffman as suffering from CFS, and if so, what limitations it caused. Similarly, the ALJ discussed the opinions of James Prickett,[6] M.D., and Robin Caldwell, M.D. regarding fibromyalgia but omitted any mention of whether these doctors had diagnosed Ms. Schiffman with CFS. *Id.*

Although the ALJ decisions does not mention CFS, the Commissioner argues that because there is a "considerable overlap of symptoms between CFS and fibromyalgia" the ALJ addressed CFS by recognizing Ms. Schiffman suffered from fibromyalgia. Dkt. 14 at 13. This may be a sensible argument, but as the ALJ's decision contains no indication the ALJ adopted

---

[6] The ALJ refers to Dr. Prickett as Dr. Pickett. Tr. 13.

this line of reasoning, neither will the Court. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). Moreover, a close review of the ALJ's decision indicates the ALJ completely rejected the CFS diagnosis rather than incorporating it in his assessment of Ms. Schiffman's residual functional capacity and testimony. This is shown by the ALJ's statement that he was rejecting Ms. Schiffman's testimony about fatigue, lack of stamina and need to rest because the medical reports show "no signs of these problems." Tr. 14. Had the ALJ found Ms. Schiffman suffered from CFS at step two and incorporated symptoms of this impairment in his assessment, he would not have made such a statement. This Court reviews the ALJ's decision; because the ALJ failed to make any mention of CFS and its impact on Ms. Schiffman's ability to work, the Court cannot accept the Commissioner's argument that the ALJ considered the medical evidence pertaining to CFS and incorporated the limitations established by the evidence in assessing Ms. Schiffman's residual functional capacity.

Additionally, the Court cannot accept the argument that the ALJ's failure to address Ms. Schiffman's CFS is harmless. In assessing a claimant's residual functional capacity, the ALJ must consider the limitations and restrictions caused by the claimant's medically determinable impairments, including any related symptoms. SSR 96-8p. As discussed above, this did not occur. The record shows at least three doctors diagnosed Ms. Schiffman with CFS: Dr. Heilbrunn, Dr. Prickett, and Dr. Caldwell.[7] The ALJ recognized Ms. Schiffman's claim that she could not work revolved around fatigue, lack of stamina, and the need to rest. Tr. 14. Consequently, the doctors' opinions that Ms. Schiffman suffered from Chronic Fatigue Syndrome was significant evidence supporting her disability claim. An ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted

---

[7] *See* Tr. 235, 492, 494.

medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, the ALJ erred by failing to explain, let alone mention, his assessment of the doctors' opinions pertaining to CFS in assessing Ms. Schiffman's residual functional capacity.

**B.     The ALJ's step two findings regarding mental impairments**

At step two, a claimant must make a threshold showing that (1) she has a medically determinable impairment and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). Here, the ALJ found Ms. Schiffman "has a reported history of dsythemic disorder and panic disorder" but that "[her] medically determinable mental impairments . . . do not cause more than minimal limitation in the claimant's ability to perform basic work activities and therefore are non-severe." Tr. 11. Ms. Schiffman contends, and the Court agrees, the ALJ erred at step two by failing to find her mental impairments were severe impairments.

The ALJ noted examining physician Ellen Lind, Ph.D., diagnosed Ms. Schiffman with dsythemia and panic disorder and assigned Ms. Schiffman a "GAF of 41 suggesting disability." *Id.* The ALJ rejected the GAF score[8] which suggested disability on the grounds that Dr. Lind noted Ms. Schiffman's mental status was within normal limits and that Dr. Lind "seems to have considered Ms. Schiffman's subjective reports of physical ailments as well." *Id.* GAF scores are relevant and should be considered. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ can discount GAF scores where the ALJ gives specific, legitimate reasons such as findings of other physicians that contradict the scores. *See Andrews v. Shalala*, 53 F.3d 1035,

---

[8] A GAF Score of 41-50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. *See* (Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) ("DSM IV").

1041 (9th Cir. 1995). Here, neither of the reasons the ALJ gave to reject the GAF scores are supported by substantial evidence. A mental status examination indicating a claimant is within normal limits does not establish the claimant's mental impairments are not severe. This is highlighted by the opinions of Dr. Anita Peterson, Ph.D., a reviewing physician, who found Ms. Schiffman is "credible for depression and occasional panic disorder [secondary] to her physical problems." Tr. 229. "She has chronic dysthemia, exacerbated because of her functional losses, but is not in tx [treatment]. Her ADLs (adult living activities) reflects intact executive function and social support." *Id.* Nonetheless, Dr. Peterson opined that Ms. Schiffman's mental problems were severe impairments because they imposed moderate limitations in concentration, pace and persistence. Tr. 227-28. As illustrated by Dr. Peterson's opinion, a claimant can have intact cognitive functioning, i.e., normal mental status, and still suffer from a severe mental impairment.

The ALJ also discounted Dr. Lind's opinions on the grounds that the doctor "seems to have considered" some of Ms. Schiffman's subjective reports of physical ailments. This is a cryptic statement and not a specific and legitimate reason to reject Dr. Lind's opinion. Certainly, an ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, there is little to show Dr. Lind's opinions about Ms. Schiffman's mental health problems were largely based on Ms. Schiffman's reports about her physical problems. Rather, the doctor separated Ms. Schiffman's physical problems under AXIS III, from the diagnoses of dsythemic disorder and panic disorder she made under AXIS I and II.[9] Tr. 209. Moreover, the doctor noted Ms. Schiffman's physical problems under AXIS III were

---

[9] Axis I includes clinical disorders, Axis II includes personality disorders, and Axis III include general medical conditions. *See* DSM-IV at 27.

based on "numerous health conditions, per medical records," and not the statements Ms. Schiffman made to the doctor.

The ALJ also noted Dr. Anita Peterson, Ph.D., a reviewing physician, opined Ms. Schiffman's mental impairments were severe "because they imposed moderate limitations in concentration, persistence, and pace." Tr. 11. The ALJ rejected Dr. Peterson's opinions stating that "the longitudinal record from her treating doctor show[s] the claimant has no signs or symptoms of a severe mental impairment that would interfere with work activities." *Id.* This is not a specific and legitimate reason to reject the doctor's opinion. To reject a medical opinion, an ALJ must set out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Here, the ALJ found Ms. Schiffman's treating doctor's records showed no signs of severe impairment. Dr. Peterson, who reviewed the same medical records came to the opposite conclusion finding, Ms. Schiffman had moderate limitations in her ability: to understand and remember detailed instructions; to maintain attention and concentration; to perform activities within a schedule and maintain regular attendance; to complete a normal workday or workweek due to psychological symptoms; to interact with the public; and to respond to changes in the workplace. Tr. 227-28. Dr. Peterson also found Ms. Schiffman was "credible for depression and occasional panic attack [secondary] to physical problems." Tr. 229. Given the conflict in the assessment of the medical record and the significant impairments found by Dr. Peterson, the ALJ was required to explain why his interpretation of the medical evidence,

rather than Dr. Peterson's interpretation was correct. The ALJ failed to do so and thus erred.

**C.     The ALJ's evaluation of Ms. Schiffman's credibility**

Ms. Schiffman contends the ALJ erred in rejecting her testimony. The ALJ did not find Ms. Schiffman was malingering and may thus reject her testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ gave three reasons for rejecting Ms. Schiffman's testimony. First, the ALJ stated "her problem is fatigue and lack of stamina that requires rest period and naps, precluding sustained working and other activities. But the medical reports, while noting her complaints of fatigue and weakness do not show any **signs** of these problems." Tr. 14 (emphasis added). This is not a clear and convincing reason to reject Ms. Schiffman's testimony. In social security proceedings, "signs" is a term of art associated with findings made at step two of the disability evaluation process. To satisfy step two's requirement of a medically determinable impairment, a claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of **signs**, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.1508; *see also* Social Security Ruling (SSR) 96-4p[10] (the existence of a medically determinable mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings; under no circumstances may the existence of an impairment be established on the basis of symptoms alone).

SSR 96-4p also notes the difference between symptoms and signs: "symptoms . . . are an individual's own perception or description of the impact of his or her physical or mental

---

[10] "SSRs do not have the force of law" but "represent the Commissioner's interpretation of the agency's regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n. 1 (9th Cir. 2001). However, they are given "some deference" as long as they are consistent with the Social Security Act and regulations. *Id*. (citation omitted).

REPORT AND RECOMMENDATION - 8

impairment(s) . . . . [W]hen any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'" SSR 96-4p, at n.2; *see also* 20 C.F.R. §§ 404.1528(a)-(b). Hence, at step two, regardless of how genuine an individual's complaints are, the existence of a medically determinable mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings. If there are no medical signs or laboratory findings to substantiate the existence of a medically determinable mental impairment, the individual must be found not disabled at step two of the sequential evaluation process. *See* SSR 96-4p; *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

By rejecting Ms. Schiffman's testimony because "the medical reports, while noting her complaints of fatigue and weakness do not show any **signs** of these problems," the ALJ incorrectly used the standards applicable at step two in determining whether Ms. Schiffman had a medically determinable impairment. The ALJ erred because once medical evidence of an underlying impairment has been shown, medical findings, or signs, are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. Here, the Commissioner concedes Ms. Schiffman's CFS should have been deemed a medically determinable and severe impairment at step two and that the ALJ erred in so finding. The ALJ's error in failing to find CFS to be a severe impairment carried over to the ALJ's assessment of Ms. Schiffman's credibility—the ALJ impermissibly relied on his finding there are no "signs" supporting CFS to reject her testimony

about her fatigue symptoms. Accordingly, the ALJ erred by relying on the lack of "signs" to discredit Ms. Schiffman's testimony about fatigue and weakness.

Second, the ALJ rejected Ms. Schiffman's testimony on the grounds that she submitted a letter of resignation indicating that she "quit work because she wanted to be a stay-at-home mom and take care of her family, rather than join the world of the competitive labor market." Tr. 14. Ms. Schiffman's letter does not support this finding. Her letter states in pertinent part:

> God has been so good to me here at the house. I feel very fortunate to have gotten to be a part of the work here. Yet God has made it very clear to me that I am to step back from this job to be at home with my family. I have so few hours in the day they need to be spent where I am needed and can be the most effective for him. I am physically unable to give the time that is needed for this job. I would still like to be involved with things such as Board meetings, events, lunches, interviews, occasional help in the office if needed. As long as that is ok with the board members and my health allows it.

Tr. 94. This letter is not clear and convincing evidence that Ms. Schiffman quit work for secondary gain—to stay at home—instead of health reasons. Rather, Ms. Schiffman clearly states she is physically unable to give the time needed for her work. The Court thus finds substantial evidence does not support the ALJ's finding that Ms. Schiffman stopped working to be a stay-at-home mom, rather than for health reasons.

And third, the ALJ rejected Ms. Schiffman's testimony on the grounds that she "is fine at home but would have problems in the workplace because she cannot deal with the additional demands required for full time work." Tr. 14. None of the statements Ms. Schiffman has made support this finding. Her letter of resignation does not support this finding as nowhere in the letter does she indicate that she is "fine at home." The testimony she gave at her hearing and the statements she made in her written function report do not support this finding. She testified that she tried working at home but could not; that she functions "normally" at home a total of

REPORT AND RECOMMENDATION - 10

approximately three hours in an eight hour day; that she struggles with washing her hair and bathing; and that she relies on her teen-aged daughter to take care of many family duties such as cooking, cleaning and shopping. Tr. 25, 26, 31-34, 139-42.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. The Court finds the ALJ erred in failing to find Chronic Fatigue Syndrome, dysthemia and anxiety/panic disorder to be severe impairments at step two of the disability determination process. The Court also concludes the ALJ erred in rejecting the testimony of Ms. Schiffman. On remand, the ALJ should consider Chronic Fatigue Syndrome, dysthemia and anxiety/panic and the other impairments previously found to be severe impairments to be severe impairments at step two, Utilizing the remaining steps in the five step disability determination process, the ALJ should evaluate these impairments and develop the medical record as necessary. The ALJ should reevaluate the testimony of Ms. Schiffman and reevaluate her residual functional capacity at step four and step five, utilizing a vocational expert if deemed necessary.

Objections, if any to this Report and Recommendation must be filed and served no later than **September 14, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses

///

///

REPORT AND RECOMMENDATION - 11

shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 30th day of August, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12